United States District Court
Southern District of Texas
**ENTERED**
June 03, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| SANDRA BAKER, § § Plaintiff. § § v. § § COMMISSIONER OF SOCIAL § SECURITY, § § Defendant. § | CIVIL ACTION NO. 4:23-cv-00397 |

## OPINION AND ORDER

Plaintiff Sandra Baker ("Baker") seeks judicial review of an administrative decision denying her application for supplemental security income under Title XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Baker and Defendant Martin O'Malley, Commissioner of the Social Security Administration (the "Commissioner"), have both filed briefs. *See* Dkts. 13–14. After reviewing the briefing, the record, and the applicable law, I **AFFIRM** the Commissioner's decision.

## BACKGROUND

On June 20, 2019, Baker filed an application for Title XVI supplemental security income. Her application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Baker was not disabled. Baker filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Baker "has not engaged in substantial gainful activity since June 20, 2019, the application date." Dkt. 5-3 at 166.

The ALJ found at Step 2 that Baker suffered from "the following severe impairments: high blood pressure, a disorder of the right knee, anxiety/depression/bipolar disorder." *Id*.

At Step 3, the ALJ found that Baker "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id*. at 167.

Prior to consideration of Step 4, the ALJ determined Baker's RFC as follows:

> [Baker] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except she can occasionally climb ramps and stairs, but should never climb ladders, ropes or scaffolds. [Baker] can occasionally balance, stoop, kneel, crouch and crawl. She should avoid all exposure to dangerous moving machinery (excluding motor vehicles) and unprotected heights. [Baker] can occasionally push, pull, and operate foot controls, bilaterally. She can remember and follow detailed, but not complex instructions. She can perform the tasks assigned, but not at a production rate pace; however, she can meet the end of day work goals. [Baker] can have occasional contact with coworkers, supervisors and the general public. She can occasionally adapt to changes in the workplace.

*Id*. at 168–69.

At Step 4, the ALJ found that Baker "has no past relevant work." *Id*. at 177.

Nevertheless, at Step 5, the ALJ elicited testimony from a vocational expert ("VE") that "there are jobs that exist in significant numbers in the national economy that [Baker] can perform." *Id*. Accordingly, the ALJ found that Baker "has not been under a disability, as defined in the Social Security Act, since June 20, 2019, the date the application was filed." *Id*. at 178.

## DISCUSSION

This social security appeal involves three issues: (1) whether the ALJ's physical RFC findings are supported by substantial evidence; (2) whether the ALJ's mental RFC findings are supported by substantial evidence; and (3) whether the ALJ erred in questioning the VE during the hearing. I address each issue below.

A.   **SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S PHYSICAL RFC**

Baker argues that "[t]he ALJ fails to reference any medical opinion that supports her [physical] RFC finding." Dkt. 13 at 9. This is simply not true. The ALJ

considered that "State Agency medical consultants at both the initial and reconsideration levels noted [Baker] could perform medium work with postural and climbing limitations." Dkt. 5-3 at 176. The ALJ found these "opinions only somewhat persuasive" because the consultants "noted no severe physical impairments," whereas the ALJ imposed "more restrictive limits on [Baker]'s ability to exert herself, perform postural movements, use her extremities and be exposed to workplace hazards." *Id.* The ALJ reviewed the medical evidence of record and determined that Baker is actually more limited than the State Agency medical consultants' opinions suggest. "That these medical experts found [Baker] . . . to have greater [physical] capabilities is ultimately supportive of the ALJ's RFC determination." *Fleming v. Saul*, No. SA-19-cv-00701, 2020 WL 4601669, at *9 (W.D. Tex. Aug. 10, 2020).

Baker emphasizes an examination by Dr. Daryl K. Daniel ("Dr. Daniel"), who diagnosed her with right knee arthropathy and chronic pain, and recommended a follow-up MRI, after ordering an x-ray that showed mild patellofemoral osteoarthritis and concern for internal derangement. But Baker overlooks that the State Agency medical consultants had the benefit of Dr. Daniel's examination and findings when rendering their opinions,[1] which the ALJ found "consistent with the determination that [Baker]'s conditions are not disabling." Dkt. 5-3 at 176.

Baker points to no contrary medical evidence that would warrant greater limitations than those imposed by the ALJ. *See Ramirez*, 606 F. App'x at 777. To the extent Baker believes that her own testimony constitutes contrary evidence warranting greater limitations, the ALJ determined that "[t]he evidence of record documents medically determinable impairments [that] could reasonably cause the types of symptoms [Baker] alleges, but not to the general extent to which she alleges them." Dkt. 5-3 at 173. Specifically, the ALJ noted that "the record reflects no loss of motion or neurological deficits of [Baker]'s extremities that would preclude the performance of medium work." *Id.* "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The

---

[1] *See* Dkt. 5-4 at 4 (listing Dr. Daniel's examination in the evidence of record at the initial review level); *id.* at 16–17 (same, on reconsideration).

ALJ's physical RFC represents a credible choice that is supported by substantial evidence.[2]

### B. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S MENTAL RFC

Baker asserts that "the ALJ's mental RFC, like her physical RFC, is unsupported by any physician of record." Dkt. 13 at 12. This is, again, untrue. State Agency psychologists opined that Baker's "mental impairments were not 'severe,' as they resulted in only mild limitations." Dkt. 5-3 at 176. As with Baker's physical RFC, the ALJ found these "opinions only somewhat persuasive" because the psychologists found no severe physical impairments, whereas the ALJ found that "the evidence available at the hearing level, when considered to provide [Baker] with the widest degree of consideration, supports a finding of severe mental impairments . . ., but to no more than a moderate degree." *Id.* Again, the ALJ reviewed the medical evidence of record and determined that Baker is actually *more* limited than the State Agency psychologists' opinions—this "is ultimately supportive of the ALJ's RFC determination." *Fleming*, 2020 WL 4601669, at *9.

Baker makes much of her consultative mental status evaluation by Richard Hardaway, Ph.D. ("Dr. Hardaway"), who opined that Baker "was unlikely to have the ability to sustain concentration and persist in a work-related activity at a reasonable pace due to her bipolar disorder." Dkt. 5-3 at 175. But Baker again overlooks that the State Agency psychologists had the benefit of Dr. Hardaway's evaluation when rendering their opinions,[3] which the ALJ found "consistent with the determination that [Baker]'s conditions are not disabling." *Id.* at 176. She also overlooks the ALJ's observation that Dr. Haraway's opinion was "based largely on [Baker]'s self-reported symptoms and [his] diagnoses only provisional." *Id.* at 175.

---

[2] Because the ALJ's RFC is supported by substantial evidence, it does not matter that the ALJ failed to conduct a function-by-function assessment. *See Barbour v. Kijakazi*, No. 4:20-cv-0861, 2021 WL 4478332, at *5 (M.D. Pa. Sept. 30, 2021) ("An ALJ's failure to conduct a function-by-function assessment does not require remand where the ALJ's decision is otherwise supported by substantial evidence.").

[3] *See* Dkt. 5-4 at 4–5 (listing Dr. Hardaway's reports in the evidence of record at the initial level); *id.* at 17 (same, on reconsideration).

Baker points to various mental deficits, *see* Dkt. 13 at 12–13, and the ALJ's failure to make a specific finding as to her ability to sustain employment as proof that the ALJ's opinion is unsupported by substantial evidence. But "[a] finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Ramirez*, 606 F. App'x at 777 (quotation omitted). The phrase "no contrary medical evidence" means that "[n]o medical evidence contradicts [the claimant's disability]." *Payne v. Weinberger*, 480 F.2d 1006, 1008 (5th Cir. 1973). That is not the case here.

The ALJ thoroughly reviewed Baker's medical records. The ALJ acknowledged Baker's "history of suicidal ideation, visual hallucinations and auditory hallucinations, . . . mood swings, [and] paranoia regarding others being out to get her." Dkt. 5-3 at 169. But the ALJ found more compelling the "improvements in the signs and symptoms associated with [Baker]'s mental impairments *when she is compliant with treatment*." *Id.* at 174 (emphasis added). Conflicts in the evidence are for the Commissioner to resolve, not me. *See Perez*, 415 F.3d at 461. The ALJ's choices here are credible, and substantial evidence supports her mental RFC determination.

## C.   THE ALJ DID NOT ERR IN QUESTIONING THE VOCATIONAL EXPERT

As for the ALJ's Step 5 determination, Baker argues that the ALJ included impermissible vocational findings in her hypothetical questions to the VE. Specifically, Baker takes issue with this statement by the ALJ: "She can perform the tasks assigned, but not at a production rate pace; however, she can meet the end of the day work goals." Dkt. 5-3 at 227. Baker contends "[t]he ALJ erred in not defining what she means by 'end of day work goals.'" Dkt. 13 at 10. According to Baker, "[i]f the [VE] assumes [she can meet the end of the day work goals], it would be impossible for the ALJ to not find that there is work that [Baker] can perform." *Id.* at 11.

I acknowledge that the ALJ's choice of words was not precise. Yet, a complete review of the hearing testimony demonstrates the fallacy of Baker's argument. The assumption that any claimant can *otherwise* do the job is baked into every hypothetical posed by the ALJ. The VE's job is to opine on whether there are jobs that will tolerate each claimant's particular limitations. During the hearing, the ALJ

instructed the VE to "assume all of the facts in my previous hypotheticals"—which included that Baker could meet the end of the day work goals—but to also assume that she would be "off task 20 percent or more of the workday." Dkt. 5-3 at 235, 236. The VE testified—after assuming, as instructed, that Baker could meet the end of the day work goals—that "no work" would be available under such a hypothetical. *Id.* at 236. The VE's answers demonstrate that she considered Baker's assumed limitations, despite the ALJ unnecessarily telling the VE To assume that Baker can otherwise do the job. Thus, the ALJ's hypotheticals did not infect the VE's analysis, and the ALJ did not err in phrasing her hypotheticals the way she did.

## CONCLUSION

For the reasons discussed above, I **AFFIRM** the Commissioner's decision. I will enter a final judgment separately.

SIGNED this 3rd day of June 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE